NOT FOR PUBLICATION                                                                                      (Doc. No. 4)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DAVID TAHA,<br><br>       Plaintiff,<br><br>       v.<br><br>TIRES PLUS and JAY SPORN,<br><br>       Defendants. | Civil No. 10-4118 (RBK/KMW)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This is an employment discrimination case. Plaintiff David Taha was employed by Defendant Morgan Tire & Auto, Inc.[1] ("MTA") and supervised by Defendant Jay Sporn. Plaintiff claims that Defendants terminated his employment and otherwise discriminated against him because of his physical disability. He asserts claims for disability discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq., and for intentional infliction of emotional distress. Currently before the Court is Defendants' motion to compel Plaintiff to mediate and arbitrate his claims and to stay or dismiss this matter pending mediation and arbitration, (Doc. No. 4). Because the parties executed a binding arbitration agreement that expressly requires Plaintiff to arbitrate disability discrimination claims and claims for intentional infliction of emotional distress arising out of Plaintiff's employment, the Court grants Defendants' motion to compel arbitration pursuant to the parties' agreement and stays this matter pending arbitration.

---

[1] Plaintiff incorrectly names MTA as "Tires Plus."

1

I.      BACKGROUND

MTA operates retail and service centers for automobile tires and equipment.  MTA hired Plaintiff on July 9, 2007, as a store manager for its store in West Berlin, New Jersey.  Defendant Jay Sporn was Plaintiff's supervisor during his employment.  Plaintiff claims that he suffers from chronic degenerative joint condition, which causes him great pain, particularly when he is required to stand for long periods of time.  He alleges that Defendants discriminated against him because of his disability by terminating him on February 26, 2010.

On July 13, 2007, in connection with his employment, Plaintiff signed MTA's New Employee Acknowledgement and Agreement ("the Agreement"), which provides:

> I understand and agree that any employment-related legal dispute I may have with [MTA] including, but not limited to, any dispute concerning my application for employment, my employment if I am hired, and the termination of my employment if I am hired, must be resolved exclusively through the Company's Employee Dispute Resolution Plan.  I therefore understand and agree that I must submit all disputes covered by the EDR Plan to mediation and, if necessary, to final and binding arbitration under the terms of the EDR Plan.  I understand and agree that disputes covered by the EDR Plan include, but are not limited to, claims under federal, state or local civil rights statutes, laws, regulations or ordinances and federal, state, or local common law contract and tort claims.
>
> I hereby waive any right that I may have to resolve disputes covered by the EDR Plan through any other means, except as set forth in the EDR Plan, including a court case and/or a jury trial.
>
> I acknowledge that I have had an opportunity to review the booklet containing the EDR Plan, a copy of which I received before signing this Acknowledgement and Agreement.  The EDR Plan fully defines the disputes that are covered, describes the procedures for mediation and arbitration, and sets forth the remedies I may obtain.
>
> I understand and acknowledge that my agreement to be bound by the EDR Plan is made in exchange for the Company employing me and the Company's promise to mediate or arbitrate disputes covered by the EDR Plan, as fully described in the EDR Plan.

> . . .
>
> I also understand that my employment with the Company will be at-will and that this Acknowledgment and Agreement does not affect my at-will employment status.

(Aff. of Sharon Smith ("Smith Aff."), Ex. 2).

The EDR Plan provides that it is "the exclusive, final and binding means by which Disputes can be resolved." (Smith Aff., Ex. 1, at 3). The EDR Plan defines "Disputes" to include any "matter arising from or concerning the employment relationship between the Employee and the Company[,] including . . . [c]laims of discrimination or harassment on any basis, including . . . handicap, disability, or any other protected category or characteristic . . . ." (Id. at 2). The EDR Plan also defines "Dispute" to include "[t]ort claims such as defamation, intentional or negligent infliction of emotional distress . . . ." (Id. at 3). The EDR Plan requires employees to submit all Disputes to mediation with the American Arbitration Association ("AAA"). If mediation is unsuccessful, the parties may initiate arbitration with the AAA. The EDR Plan provides that an arbitrator may award all remedies and monetary damages "as may be just and reasonable under applicable law." (Id. at 14).

Plaintiff filed the Complaint in the Superior Court of New Jersey asserting a claim under the NJLAD and under common law for intentional infliction of emotional distress. Defendants removed the matter to this Court based on diversity jurisdiction. MTA now moves to compel Plaintiff to mediation and arbitration and to stay or dismiss this litigation. Plaintiff did not respond to Defendants' motion.

## II.    DISCUSSION

The Federal Arbitration Act[2] provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  "The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).  However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (holding that the FAA provisions indicate a "liberal federal policy favoring arbitration agreements").  The FAA guarantees that any agreement to settle a dispute by arbitration in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  If a district court determines that the parties agreed to arbitrate their claims, the court must stay rather than dismiss the action pending the arbitration.  See Lloyd v. Hovensa, 369 F.3d 263, 272 (3d Cir. 2004).

---

[2] The FAA applies only to "contract[s] evidencing a transaction involving commerce."  9 U.S.C. § 2.  The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (U.S. 2003).  The Supreme Court has also held that employment agreements are contracts "involving commerce" and therefore fall within the FAA's scope.  See Circuit City Stores v. Adams, 532 U.S. 105, 114 (2001); see also Caley v. Gulfstream Aero. Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) ("The United States Supreme Court has clarified that the FAA generally applies to contracts of employment except those involving 'transportation workers.'").  Thus, because the FAA preempts state law in cases where it applies, the Court applies the FAA to the employment dispute at issue here.

4

In determining whether to enforce a private arbitration agreement, a court must engage in a "two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co., 401 F.3d at 532 (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)). When a dispute consists of several claims, the court must determine on an issue-by-issue basis whether a party agreed to arbitrate each issue. Id. at 532 (citing Painewebber Inc. v. Hofmann, 984 F.2d 1372, 1376-77 (3d Cir. 1993)). "When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability." Id. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc., 475 U.S. at 650.

### A. Is There a Valid Arbitration Agreement?

Under New Jersey law, the basic elements of a valid contract are: (1) an offer by the promisor to act or forebear in some way; (2) acceptance by the promisee of the promisor's offer; and (3) fair consideration paid by the promisee in exchange for the promisor's performance. See Am. Handkerchief Corp. v. Frannat Realty Co., 109 A.2d 793, 795-96 (N.J. 1954) (discussing contract formation under New Jersey law).

Here, a valid agreement to arbitrate exists between the parties. MTA offered Plaintiff employment and compensation for his work in exchange for, among other things, Plaintiff's promise to resolve all disputes arising from his employment pursuant to the EDR Plan. MTA also offered to waive its right to litigation and resolve any disputes it may have with Plaintiff arising out of his employment through the EDR Plan. Plaintiff unequivocally manifested his intent to accept Plaintiff's offer when he signed the Agreement, which clearly provides that the

EDR Plan is a condition of his at-will employment.  That transaction created a valid and enforceable contract that included a promise to resolve disputes pursuant to the EDR Plan.  Plaintiff is therefore bound by his agreement to mediate and arbitrate his claims.[3]

Additionally, the Court notes that other courts considering the same EDR Plan at issue in this case have concluded that it constitutes a valid and enforceable arbitration agreement against former employees.[4]  See Fields v. Morgan Tire & Auto., Inc., No. 07-2715, 2008 U.S. Dist. LEXIS 21788, at *8-11 (D.N.J. Mar. 18, 2008) (ordering party to arbitration based on the same agreement at issue here); Carter v. Firestone, No. 05-2042, 2006 U.S. Dist. LEXIS 27874, at *5-11 (E.D. Mo. Apr. 28, 2006) (same).

### B. Are Plaintiff's Claims within the Scope of the Parties' Arbitration Agreement?

To ascertain the scope of an agreement to arbitrate, the Court must apply state contract principles.  First Options of Chi., Inc., 514 U.S. at 944.  Under New Jersey law, the intent of the parties controls when interpreting a contract.  See Pacifico v. Pacifico, 920 A.2d 73, 77 (N.J. 2007); Great Atl. & Pac. Tea Co. v. Checchio, 762 A.2d 1057, 1060-61 (N.J. Super. Ct. App. Div. 2000).  The court's role when interpreting a contract "is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'"  Pacifico, 920 A.2d at 77 (quoting N. Airlines, Inc. v. Schwimmer, 96 A.2d 652, 656 (N.J. 1953)).  "The polestar of construction is the intention of the

---

[3] Plaintiff cannot argue that his status as an at-will employee reflects a lack of consideration for his promise to follow the EDR Plan.  See Richardson v. V.I. Port Auth., No. 09-136, 2010 U.S. Dist. LEXIS 40787, at *44-46 (D.V.I. Apr. 21, 2010) (applying federal common law and rejecting an employee's argument that his at-will employment was not adequate consideration to create a binding arbitration agreement).  Under New Jersey law, a mutual promise is sufficient consideration to create a binding contract.  See Oscar v. Simeonidis, 800 A.2d 271, 276 (N.J. Super Ct. App. Div. 2002).  The EDR Plan provides that "both employees and the Company give up their right to a court case or jury trial as a means of resolving disputes covered by the EDR Plan."  (Smith Aff. Ex. 1, at vi).  Thus, there was valid consideration because, irrespective of Plaintiff's at-will employment status, Plaintiff and MTA exchanged mutual promises to resolve disputes under the EDR Plan.

[4] The EDR Plan at issue here was instituted by MTA in September 2003.

parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded." N. Airlines, Inc., 96 A.2d at 656.

Here, the EDR Plan unambiguously incorporates Plaintiff's claims. Count I of the Complaint asserts a claim under the NJLAD for disability discrimination. The EDR Plan expressly applies to "[c]laims of discrimination or harassment on any basis, including . . . handicap, disability, or any other protected category or characteristic. . . ." (Smith Aff., Ex. 1, at 2). Thus, Count I is within the scope of the parties' arbitration agreement. Count II of the Complaint asserts a claim for intentional infliction of emotional distress stemming from MTA's termination of Plaintiff's employment. The EDR Plan expressly applies to any "matter arising from or concerning the employment relationship between the Employee and the Company," including "[t]ort claims such as . . . intentional or negligent infliction of emotional distress . . . ." Thus, Count II is also within the scope of the parties' arbitration agreement.

### III. CONCLUSION

Because Plaintiff agreed to arbitrate his claims, the Court grants Defendants' motion to compel arbitration. The Court stays this matter pending the conclusion of the mediation and arbitration process. An appropriate Order shall enter.

Dated: 6/8/2011                               /s/ Robert B. Kugler
                                              ROBERT B. KUGLER
                                              United States District Judge